FILED

2005 Feb-04  PM 02:44
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## EASTERN DIVISION

| | | |
|---|---|---|
| **LEROY NUNNALLY JR., et al.,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION NO. CV-04-PT-2890-E** |
| | ) | |
| **EQUIFAX INFORMATION** | ) | |
| **SERVICES LLC,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM  OPINION

This cause comes on to be heard upon defendant Equifax Information Services LLC's

Motion to Dismiss, filed on December 7, 2004.

## FACTS  AND  PROCEDURAL  HISTORY[1]

Plaintiffs Leroy Nunnally, Jr. and Gladys Nunnally ("Nunnallys") are residents and

citizens of Calhoun County, Alabama.  (Cmpt. ¶ 2).  Plaintiff Arlene M. Rhodes, f/k/a Arlene M.

Cook ("Rhodes") is a resident and citizen of Hale County, Alabama.  (*Id.* at ¶ 3).  Defendant

Equifax Information Services LLC ("Equifax") is a non-Alabama corporation with its principal

place of business in Georgia.  (*Id.* at ¶ 4).  Equifax, which is licensed to transact business in

Alabama, is a consumer reporting agency which assembles and disperses credit reports to third

parties in exchange for compensation.  (*Id.* at ¶¶ 4-6).  Equifax is one of the three largest credit

reporting agencies in the United States and one of the largest national repositories of consumer

financial data.  (*Id.* at ¶ 18).

---

[1] The facts are given as they are alleged in the complaint.

1

The Nunnallys examined their consumer reports from Equifax on or about September 6, 2002 and found that the reports contained false information. (Cmpt. ¶ 25). Equifax was falsely reporting that each of the Nunnallys had a First USA Bank account and a JC Penny/Monogram account. (*Id.* at ¶¶ 26-27). In 2002, the Nunnallys advised Equifax by phone and first class mail of these inaccuracies and asked that they be reinvestigated. (*Id.* at ¶ 28). Equifax never reported the results of the reinvestigation to the Nunnallys, and the Nunnallys believe that Equifax never performed a proper investigation as they requested. (*Id.* at ¶ 29).[2]

On or about March 30, 2004, the Nunnallys again ordered their consumer reports from Equifax. (Cmpt. ¶ 30). The Nunnallys found that the new reports sent by Equifax still falsely reported that each of them had First USA Bank and JC Penny/Monogram accounts. (*Id.*) In or about May 2004, the Nunnallys again advised Equifax by written correspondence of the errors on their reports and asked for a reinvestigation of the inaccurately published information. (*Id.* at ¶¶ 31-32). On or about July 2, 2004, Equifax reported the results of the reinvestigation of Leroy Nunnally's report. (*Id.* at ¶ 33). Equifax sent a one-page document to Leroy Nunnally indicating that the JC Penny/Monogram account had been removed from his consumer file and that the other disputed account was not currently reporting. (*Id.*) Equifax reported the results of the reinvestigation regarding Gladys Nunnally's file to her on or about July 9, 2004. (*Id.* at ¶ 34). In a one-page document, Equifax reported that both the JC Penny/Monogram and the First USA Bank account had been deleted from her consumer file. (*Id.*)

---

[2] Defendant maintains that plaintiffs do not and cannot assert any FCRA claim in connection with this 2002 request because the statute of limitations for such an FCRA claim is two years. 15 U.S.C. § 1681p.

In August 2004, the Nunnallys ordered and paid for copies of their entire credit files from Equifax. (Cmpt. ¶ 35). Both the Nunnallys received copies of their reports on or about August 13, 2004, and both reports were free of inaccurate information. (*Id.* at ¶¶ 36-67). Leroy Nunnally's report was 14 pages and Gladys Nunnally's was 12 pages. (*Id.*)

Rhodes viewed her consumer report from Equifax on March 18, 2004. (Cmpt. ¶ 38). The report inaccurately reported that Rhodes had account balances owing to CBS Collection Division and Homecomings Financial Network, when those accounts had actually been paid in full. (*Id.* at ¶ 39). The report also falsely reported that Rhodes had accounts with Merchants & Farmers and Discover Financial Services. (*Id.*) Finally, the report listed Rhodes' surname as Cook, a name she had used prior to her divorce. (*Id.*)

In or about March 2004, Rhodes notified Equifax of these inaccuracies by filling out Equifax's Research Request Form. (Cmpt. ¶ 40). On September 14, 2004, Equifax sent Rhodes a two-page document reporting the results of its reinvestigation of her consumer report. (*Id.* at ¶ 41). This document informed Rhodes of the following changes to her file: the CBS Collection Division account had been deleted; her name had been updated, the Homecoming Financial Network account was reported as closed; and the Merchants & Farmers account was listed as paid as agreed. (*Id.*) Equifax failed to report whether it had reinvestigated Rhodes dispute regarding the Discover Financial Services account. (*Id.*) Rhodes reordered and paid for her Equifax file on September 17, 2004. (*Id.* at ¶ 42). On September 17, 2004, Rhodes received her 29-page report, which still inaccurately reported the Discover Financial Services account and which listed her name as Arlene "Phodes." (*Id.* at ¶ 43).

The Nunnallys and Rhodes filed this action on October 1, 2004 alleging that they have

3

suffered damages as a result of Equifax's publication of false, adverse credit information on their

consumer reports.[3]  The complaint contained one count alleging that Equifax failed to comply

with 15 U.S.C. § 1681i(a)(6) of the Fair Credit Reporting Act ("FCRA").[4]

---

[3] Plaintiffs' complaint requests that the action be certified as a class action under Federal Rule of Civil Procedure 23.  (Cmpt. ¶ 45).  Plaintiffs seek to represent the following class:

> All consumers in the United States and its Territories who requested the Defendant to reinvestigate their consumer reports and to whom the Defendant failed to send a free consumer report after the Defendant had completed its reinvestigation.

(*Id.*)

[4] Count One alleges:

> After its reinvestigation was completed, Equifax was required under 15 U.S.C. § 1681i(a)(6) to provide to the Plaintiffs a free copy of their consumer reports after Defendant completed its reinvestigations of the Plaintiffs' consumer files.

> Following the reinvestigations, Equifax sent brief summary reports concerning the results of its reinvestigations to the Plaintiffs, but failed to send the Plaintiffs a new copy of their consumer reports as required by FCRA § 1681i(a)(6)(B)(ii), resulting in a violation of the FCRA, 15 U.S.C. § 1681i(a)(6).

> Due to Defendant's failure to provide the Plaintiffs with a free and complete copy of their consumer reports following the Defendant's reinvestigation (*sic*) were unsure and unaware of what their credit report now contained and whether Equifax had in fact corrected the inaccurate consumer report it was publishing to third parties.

> Consequently, after the reinvestigations, the Plaintiffs were forced to pay Equifax a fee in order to obtain new copies of their consumer reports (that Equifax was obligated under the FCRA to provide free of charge) to ensure that Equifax had removed the inaccurate information it had previously been reporting about the Plaintiffs.

> Defendant's failure to send the Plaintiffs new consumer reports free of charge following its reinvestigations constituted a willful and/or negligent violation of the FCRA, 15 U.S.C. § 1681(a)(6), and Plaintiffs are entitled to actual and/or statutory damages as provided for in 15 U.S.C. §§ 1681n and/or 1681o.

## RULE 12(b)(6) STANDARD

Rule 12(b)(6) tests the legal sufficiency of a complaint.  When considering a Rule 12(b)(6) motion, the court assumes that all factual allegations pled in the complaint are true. *United States v. Gaubert*, 499 U.S. 315, 327, 111 S. Ct. 1267, 113 L. Ed. 2d 335 (1991).  All factual allegations are to be construed in the light most favorable to the plaintiff.  *Brower v. County of Inyo*, 489 U.S. 593, 598, 109 S. Ct. 1378, 103 L. Ed. 2d 628 (1989).  Dismissal under Rule 12(b)(6) is appropriate "'only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations' of the complaint."  *Rendon v. Valleycrest Prods., Ltd.*, 294 F.3d 1279, 1282 (11th Cir. 2002) (citing *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984)).

## ARGUMENTS[5]

### I.   Defendant's Motion to Dismiss.

####        A.    The FCRA Differentiates Between a "Consumer Report" and a "File."

Defendant maintains that plaintiffs' claims are premised on a misreading of the key statutory provisions of the FCRA.  Defendant notes that the FCRA contains a detailed definition of the phrase "consumer report":

> The term "consumer report" means any written, oral, or other communication of any information by a consumer reporting agency bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living which is used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility for--

(Cmpt. ¶¶ 55-59).

[5] This section summarizes the arguments made by the parties and does not necessarily reflect the conclusions reached by the court.

> (A) credit or insurance to be used primarily for personal, family, or household purposes;
> (B) employment purposes; or
> (C) any other purpose authorized under section 1681b of this title.

15 U.S.C. § 1681a(d). *See also Yang v. Government Employees Ins. Co.,* 146 F.3d 1320, 1323-24 (11th Cir. 1998) (analyzing definition of "consumer report" under FCRA). Given this definition, defendant argues, the phrase "consumer report" encompasses any communication of credit-related information by a credit reporting agency, no matter how brief (such as an instant "yes" or "no" credit approval or a three-digit score). *See also* FTC Statement of General Policy or Interpretations under the FCRA, 16 C.F.R. Pt. 600, App. (finding that a list of names can constitute a "consumer report" if complied based on credit-worthiness).

In contrast to a "consumer report," defendant points out, a consumer's "file" includes all information the consumer reporting agency has with respect to the particular consumer:

> The term "file", when used in connection with information on any consumer, means all of the information on that consumer recorded and retained by a consumer reporting agency regardless of how the information is stored.

15 U.S.C. 1681a(g). Thus, defendant asserts, whereas the consumer's "file" represents the entire body of information collected by a credit reporting agency as to a consumer, a "report" reflects any communication based upon that file that is less than a full disclosure of the file.

**B.     The FCRA Provisions Authorizing Consumers to Receive Complete Disclosure of the Entirety of Their Credit File.**

According to defendant, the FCRA clearly indicates when a credit reporting agency must disclose all of the information in a consumer's "file" rather than merely provide a "consumer report" communicating some credit information about a consumer. Defendant notes that the provision governing "[d]isclosures to consumers" upon request, for example, obliges a credit reporting agency

6

to respond to a request from a consumer with a full disclosure of "[a]ll information in the consumer's

file at the time of the request."  15 U.S.C. § 1681g(a)(1).

Defendant asserts that other provisions of the FCRA cross-reference this unambiguous

reference to a disclosure of "[a]ll information in the consumer's file . . ." (as opposed to a mere

"consumer report").  Defendant points out that the provision requiring credit reporting agencies to

provide each consumer with one "[f]ree annual disclosure," for example, directly references § 1681g:

> All consumer reporting agencies described in subsections (p) and (w) of section 603
> [15 USCS § 1681a] shall make all disclosures pursuant to section 609 [15 USCS §
> 1681g] once during any 12-month period upon request of the consumer and without
> charge to the consumer.

15 U.S.C. § 1681j(a).   Other provisions requiring credit reporting agencies to provide free

disclosures under certain other circumstances also directly reference § 1681g.  Such circumstances

include: when a consumer has received a notice of adverse action by a creditor, 15 U.S.C. § 1681j(b);

when a consumer certifies that he or she is unemployed or on welfare, 15 U.S.C. § 1681j(c)(1)-(2);

or when credit fraud may have occurred, 15 U.S.C. § 1681j(c)(3).  Defendant asserts that when a

consumer requests a full disclosure that is not addressed by these provisions for free disclosures, "a

consumer reporting agency may impose a reasonable charge on a consumer."   15 U.S.C. §

1681j(f)(1).

    **C.**    **A Credit Reporting Agency's Reinvestigation Reporting Duties.**

_____According to defendant, plaintiffs make no claim that they did not receive the free

"disclosure" required under the various provisions of § 1681j.  Nor, defendant asserts, do they cite

a provision referring to § 1681g's required disclosure of "[a]ll information in the consumer's file."

Instead, defendant argues, the provision on which plaintiffs base their claims mandates specific, but

very limited, information.

Defendant points to 15 U.S.C. § 1681i, and states that the FCRA has a detailed procedure governing a consumer's disputes as to the accuracy of credit information in his or her file. If a consumer disputes the "accuracy of any item of information contained in a consumer's file," then the consumer reporting agency is obliged to conduct a reasonable reinvestigation "free of charge." 15 U.S.C. § 1681i(a)(1)(A). Defendant notes that, upon completing this reinvestigation, the agency must give the consumer very specific written notice of the results:

> (A) In general.--A consumer reporting agency shall provide written notice to a consumer of the results of a reinvestigation under this subsection not later than 5 business days after the completion of the reinvestigation, by mail or, if authorized by the consumer for that purpose, by other means available to the agency.

> (B) Contents.--As part of, or in addition to, the notice under subparagraph (A), a consumer reporting agency shall provide to a consumer in writing before the expiration of the 5-day period referred to in subparagraph (A)--

> (i) a statement that the reinvestigation is completed;

> (ii) <u>a consumer report that is based upon the consumer's file as that file is revised as a result of the reinvestigation;</u>

> (iii) a notice that, if requested by the consumer, a description of the procedure used to determine the accuracy and completeness of the information shall be provided to the consumer by the agency, including the business name and address of any furnisher of information contacted in connection with such information and the telephone number of such furnisher, if reasonably available;

> (iv) a notice that the consumer has the right to add a statement to the consumer's file disputing the accuracy or completeness of the information; and

> (v) a notice that the consumer has the right to request under subsection (d) of this section that the consumer reporting agency furnish notifications under that subsection.

15 U.S.C.A. § 1681i(a)(6) (emphasis added).  Defendant argues that the highlighted portion – "a consumer report that is based upon the consumer's file as that file is revised as a result of the reinvestigation" – is the focus of the plaintiffs' claims here.  According to defendant, there is no allegation that the summary consumer reports provided by Equifax failed to comply with any of the other notice requirements of § 1681i(a)(6).

Although plaintiffs do not specify their exact theory of statutory construction, defendant argues, they appear to be focusing on and misunderstanding the reference to a "consumer report."  However, defendant contends, a "consumer report" is not the same thing as a "disclosure" of "all information in a consumer's file."  To the contrary, defendant asserts, a "consumer report" is any communication reflecting information that bears upon a consumer's credit-worthiness, which clearly includes the reinvestigation reports provided by Equifax to plaintiffs here.[6]

Defendant maintains that the statute unambiguously refers to a "consumer report" that is "based upon the consumer's file."  According to defendant, a report is not "based upon" the consumer's file if it discloses the entire file.  Defendant contends that to equate the referenced "consumer report" to a complete disclosure of the "consumer's file" improperly would render the phrase "based upon" meaningless and nugatory.  *See Rake v. Wade,* 508 U.S. 464, 471 (1993) ("To avoid deny[ing] effect to a part of a statute, we accord significance and effect ... to every word") (internal quotations and citation omitted).  Further, defendant argues, the report must be "based upon" the file "as that file is revised," meaning that those portions of the file that were not revised as a result of the investigation need not be disclosed again to the consumer.

_____

[6] According to defendant, plaintiffs cannot dispute that the brief summary report constitutes a "consumer report," given that it indisputably contains information bearing on plaintiffs' credit-worthiness.

Defendant argues that plaintiff's construction of "consumer report" to mean "credit file" renders all the language in this subsection after the phrase "consumer report" completely superfluous: if plaintiffs' interpretation were correct, and "consumer report" meant the same thing as "credit file," then subsection (B)(ii) would simply require a "consumer report" and nothing more.[7]

Defendant points out that other provisions of the FCRA confirm that Congress knows how to mandate disclosure of the full contents of a consumer's file when it intends to require such disclosure. *See, e.g., Barnhart v. Sigmon Coal Co., Inc.*, 534 U.S. 438, *452* (2002) (stating, "when Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion") (internal quotation marks and citation omitted).  Here, defendant argues, Congress unambiguously mandated full disclosure of a consumer's file in § 1681g and cross-referenced this full disclosure requirement in other FCRA provisions.  Had Congress intended for a consumer to receive the same complete file disclosure after a reinvestigation, defendant asserts, it easily could have said so, either directly or through another cross-reference to § 1681g.

Finally, defendant argues, its construction of the statute accords with commons sense. According to defendant, it makes sense for Congress to require a complete disclosure of a consumer's file initially, so that any potential issues can be identified and brought to the credit reporting agency's attention.  Once the agency has conducted a reinvestigation, defendant maintains, the better course is a summary of results of the investigation, so that the consumer can understand immediately what changes to his or her file have occurred as a result of the reinvestigation.

---

[7] A counter argument could be made that § 1681i could require the "results" of the reinvestigation and nothing more.

Defendant argues that, particularly where a complete file disclosure runs more than a dozen pages (as is the case with each of the named plaintiffs here), producing a full file disclosure is an ineffective means of conveying the reinvestigation revisions. This is so, defendant asserts, because a consumer would be forced to wade through the entire disclosure and systematically compare each of the disputed items in the two disclosures. Indeed, defendant maintains, if a consumer did not immediately discover a reinvestigation error in the full disclosure, that consumer might accuse the credit reporting agency of "burying" the error by producing the full file disclosure.

## II.    Plaintiff's Response.

Plaintiffs dispute Equifax's contention that the notices it sent plaintiffs after its reinvestigations were themselves "consumer reports" and, therefore, complied with § 611 of the FCRA. Further, plaintiffs assert that defendant's argument is merits-based and cannot be addressed in a motion to dismiss.[8] According to plaintiffs, they have alleged that defendant did not send them a consumer report as required by § 611, and their allegations must be accepted as true for purposes of this motion. *See Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1273 n.1 (11th Cir. 1999) (stating, "[a]t the motion to dismiss stage, all well-pleaded facts are accepted as true, and the reasonable inferences therefrom are construed in the light most favorable to the plaintiff").

### _____A.    The Plain Language of the FCRA Requires Equifax to Give Consumers a Free Copy of Their Consumer Reports Upon Completion of Equifax's Reinvestigations.

Plaintiffs contend that defendant's position is inconsistent with and contrary to the plain language of the statute. According to plaintiffs, defendant's argument confuses 15 U.S.C. § 1681i's

---

[8] During a January 31, 2005 recorded conference, the plaintiffs somewhat, at least, withdrew this argument.

very distinct requirement that notice be sent to the consumer regarding the results of the defendant's reinvestigation with the requirement that it provide a consumer report after the disputed information has been revised.   Plaintiffs assert that § 1681i sets out the two requirements in two distinct subsections as follows:

> (6) Notice of results of reinvestigation.--

>> (A) In general.--A consumer reporting agency shall provide written **notice** to a consumer **of the results of a reinvestigation** under this subsection not later than 5 business days after the completion of the reinvestigation, by mail or, if authorized by the consumer for that purpose, by other means available to the agency.

>> (B) Contents.**--As part of, or in addition to, the notice** under subparagraph (A), **a consumer reporting agency shall provide** to a consumer in writing before the expiration of the 5-day period referred to in subparagraph (A)--

>>> (i) a statement that the reinvestigation is completed;

>>> (ii) **a consumer report** that is based upon the consumer's file as that file is revised as a result of the reinvestigation . . .

15 U.S.C.A. § 1681i(a)(6) (emphasis added).   Although the statute allows a consumer reporting agency ("CRA")  to give both the notice and the consumer report together, plaintiffs argue, they are clearly distinct items, each of which must be provided in order to comply with the statute.   Plaintiffs contend that subsection (B) does not permit CRAs to give only portions or parts of the consumer report at issue.   Nor, plaintiffs maintain, does it allow CRAs to provide only descriptions of the revised status of the consumer's report, such as the ones defendant gave plaintiffs.   According to plaintiffs, the statute requires that CRAs give consumers the actual consumer report based on the revised consumer file.   Although Equifax gave each plaintiff a one or two page notice of the results of the reinvestigations, plaintiffs allege that it never sent them copies of their consumer reports as

mandated by § 1681i.  Plaintiffs acknowledge that the summary notices sent by defendant do likely satisfy the requirements of § 611(a)(6)(A).  However, plaintiffs argue, they do not satisfy the separate requirement of a "consumer report" under subsection (6)(B).

It is plaintiffs' position that the notices sent by defendant are expressly excluded from the FCRA's definition of a "consumer report."  Plaintiffs acknowledge that "consumer report" is broadly defined to encompass "any written, oral, or other communication of any information by a consumer reporting agency . . ." 15 U.S.C. § 1681a.  However, plaintiffs assert that under § 1681a, "[t]he term 'consumer report' does not include . . . any . . . report containing information solely as to transactions or experiences between the consumer and the person making the report . . ."  15 U.S.C. § 1681a(d)(2)(A)(i).  Defendant's notices of the results of its own reinvestigations, plaintiffs contend, were reports of the "transactions" or "experiences" at issue between defendant and plaintiffs.

Plaintiffs dispute defendant's contention that the statute requires nothing more than the notice it gave to plaintiffs.  According to plaintiffs, defendant's argument relies on only a selective quote taken out of context from the statute.  Plaintiffs point to the language of the statute and assert that it requires defendant to provide consumers with copies of their consumer reports which include information that has been updated or revised during, or as a result of, a reinvestigation.  Plaintiffs argue that reading the statute to require defendant to give a complete copy of the consumer report based on the consumer file as it exists after the reinvestigation gives effect to all the words of the statute and does not render any word "superfluous."

Plaintiffs further maintain that reading the statute to require a consumer report in this circumstance is consistent with the other provisions of the FCRA and with the purposes of the Act. Plaintiffs assert that, in almost identical language to § 611's requirement, CRAs are statutorily

mandated to provide, upon request, "a free copy of *a consumer report* on the consumer . . ." to persons against whom adverse action has been taken based on information in their consumer reports. 15 U.S.C. § 1681m(a)(3)(A); 15 U.S.C. § 1681j.  Similar to § 611, this provision, plaintiffs contend, does not mention a full disclosure of the file.  Further, plaintiffs point out, § 1681j(c) requires CRAs to give free reports when the consumer "is unemployed and intends to apply for employment . . .; is a recipient of public welfare assistance; or . . . has reason to believe that the file on the consumer at the agency contains inaccurate information due to fraud."  15 U.S.C. § 1681j(c).

According to plaintiffs, the purpose of the free consumer reports provisions of §§ 1681j, 1681m, and 1681i are the same: to give the consumer the opportunity to review his or her credit report for possible inaccuracies and have those inaccuracies corrected.  Plaintiffs maintain that the error in defendant's position is made clearer when applied to the situation in which a consumer has had an adverse action taken against him or her based on inaccurate information in their report. Plaintiffs argue that such a consumer must receive a full copy of his consumer report so that he has the opportunity to review it in its entirety.  It makes no sense, plaintiffs contend, to require a CRA to send only selective portions of the consumer report when the other portions may contain the erroneous information on which the adverse action is based.  Plaintiffs state that the ultimate goal of accurate consumer reports is achieved only by requiring that a complete copy of the consumer report be provided.  For instance, plaintiffs assert that CRAs often list an account on more than one page of a consumer's report.  Therefore, plaintiffs argue, it is possible that, even if one listing of the account was removed, the inaccurate information could still be listed on another page of the report. According to plaintiffs, consumers must be provided with the entire consumer report to ensure that the inaccurate information is completely removed.  Further, plaintiffs assert that consumers should

14

be given the opportunity to make sure that the corrections made by CRAs are done correctly. Plaintiffs contend that this need is demonstrated by defendant inaccurately changing Rhodes' name on her consumer report to "Phodes."

**B.      The Purposes of the FCRA Are Furthered Only by Requiring Equifax to Give Consumers a Complete Copy of Their Consumer Reports.**

Plaintiffs assert that requiring defendant to give consumers a complete copy of their consumer reports as it relates to their credit is consistent with, and is necessary to carry out, the purposes of the statue as expressed by Congress.  Congress made the following findings in enacting the FCRA:

(1)      The banking system is dependent upon fair and accurate credit reporting. <u>Inaccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence</u> which is essential to the continued functioning of the banking system.

(2)      An elaborate mechanism has been developed for investigating and evaluating the credit worthiness, credit standing, credit capacity, character, and general reputation of consumers.

(3)      Consumer reporting agencies have assumed a vital role in assembling and evaluating consumer credit and other information on consumers.

(4)      There is <u>a need to insure that consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy</u>.

15 U.S.C. § 1681(a) (emphasis added).  The Act further states:

It is the purpose of this subchapter to require that consumer reporting agencies adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information in accordance with the requirements of this subchapter.

15 U.S.C. § 1681(b).  According to plaintiffs, these purposes are met only if consumers are given sufficient information to determine that the consumer reports that defendant and other CRAs are distributing about them are accurate.  Plaintiffs maintain that the risks inherent with defendant's practice of only sending very selective lines of a consumer's report following its reinvestigation are great, and defendant is undermining the safety precautions put in place by Congress.

**III.    <u>Defendant's Reply.</u>**

Defendant disputes plaintiffs argument that this court must accept as true the complaint's assertion that defendant did not send plaintiffs a consumer report as required by § 611.  Defendant maintains that this is exactly the legal issue to be decided by this court in resolving this Motion. Defendant contends that this issue can be resolved by comparing the contents of the reports provided by defendant with the governing provisions of the FCRA.  *See Jackson v. BellSouth Telecommunications,* 372 F.3d 1250, 1262 (11th Cir. 2004) (stating, "[c]onclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal") (internal quotation marks and citation omitted).

Defendant further argues that plaintiffs' Response mischaracterizes provisions of the FCRA. Defendant first contests plaintiffs' assertion that 15 U.S.C.A. § 1681i(6)(a) contains two requirements in two distinct subsections.  What plaintiff labels as "distinct subsections," according to defendant, describe (1) the notice requirements "[i]n general," and (2) the "[c]ontents" of that notice. 15 U.S.C.A. § 1681i(6)(a).  Indeed, defendant argues, the "[c]ontents" subsection expressly provides that the requirements can be "part of" the notice required in the previous subsection.  15 U.S.C.A. § 1681i(a)(6)(B).

Defendant next disputes plaintiffs' argument that the notice of the results of reinvestigations

falls within an exception to "consumer reports" because it contains information solely related to transactions or experiences between plaintiffs and defendant.  As an initial matter, defendant contends, the reinvestigation report is not limited to information regarding transactions between it and plaintiffs.  Instead, defendant argues, the report contains information relating to plaintiffs' various accounts with third-party creditors.  Further, defendant asserts, a review of the entire exception confirms that it merely serves to prevent normal correspondence (e.g., a letter from a landlord to a tenant about late rent) from constituting a "consumer report" that triggers the protections of the FCRA.  *See* 15 U.S.C. § 1681a(d)(2)(A)(i).  *See also* F.T.C., *Statement of General Policy or Interpretation; Commentary on the Fair Credit Reporting Act*, 55 FR 18804-01, 18811 (May 4, 1990) (stating that this exemption from the definition of "consumer report" "applies to reports limited to transactions or experiences between the consumer and the entity making the report (e.g., retail stores, hospitals, present or former employers, banks, mortgage servicing companies, credit unions, or universities)," and "does not apply to reports by these entities of information beyond their own transactions or experiences with the consumer").

Additionally, defendant takes exception to plaintiffs' argument that it premised its position on a "selective quote taken out of context from the statute."  Instead, defendant maintains, it set forth the entire statute before parsing each of the pertinent provisions.  Defendant also attacks plaintiffs' argument that other provisions of the FCRA use the phrase "consumer report" to refer to a complete disclosure of a consumer's file.  Defendant asserts that several of the provisions cited by plaintiffs under this argument, including 15 U.S.C.A. § 1681j(c), cross reference 15 U.S.C.A. § 1681g, which specifically requires full disclosure of "[a]ll information in the consumer's file."  Defendant notes that in its original brief, it specifically contrasted these clear cross-references to § 1681g with the

17

narrower requirements for reinvestigation reports.  Finally, defendant disputes plaintiffs' assertion that, under 15 U.S.C. § 1681m(a)(3)(A) and 15 U.S.C. § 1681j, CRAs are statutorily mandated to provide, upon request, "a free copy of *a consumer report* on the consumer . . ." to persons against whom adverse action has been taken based on the information contained therein.  Defendant asserts that the language quoted by plaintiffs concerns the duties of "users taking adverse actions" against consumers based on credit information, and not the duties of the CRAs themselves.  *See* 15 U.S.C. § 1681m(a) (addressing the "[d]uties of users taking adverse actions on basis of information contained in consumer reports").

Defendant argues that each of plaintiffs' citations to provisions of the FCRA confirms that Congress knows how to cross-reference § 1681g's full disclosure requirements when it intends to require a credit reporting agency to provide a complete disclosure of a consumer's entire file. However, defendant notes, Congress did not include such a cross-reference in the FCRA provisions regarding the notice of results of a reinvestigation.

## IV.   <u>Supplemental Responses.</u>

During a recorded discussion on January 31, 2005, the court requested the parties to summarize their arguments with reference to the requirements of 15 U.S.C. § 1681i.  Those summaries follow:

### A.   **Plaintiffs' Summary of Argument.**

Plaintiffs assert:

> Section 1681i requires Equifax to give the Plaintiffs *both* notice of the results of its reinvestigation and a free copy of their consumer reports.  15 U.S.C. § 1681i(a)(6). Requiring a complete copy of a consumer report following a reinvestigation is the only way to achieve Congress's stated purpose to ensure credit report accuracy.  A complete consumer report allows consumers to check that the disputed information

has indeed been corrected, including the frequent duplication of those errors. *See* tab D to Pls' Oppos. to Def's Motion to Dismiss. Because consumer reports are created by the merging of electronic data, reviewing the complete consumer report also ensures that the re-merging of the corrected data in the consumer's file does not create yet additional merging errors. For example, if Equifax had merged the "corrected" data on Ms. Rhodes to create a report, it could have erroneously merged information on another "*Phodes*." Finally, section 1681i(d) gives consumers the right to have the Defendant "furnish notification . . . to any person **specifically designated by the consumer** who . . . received a consumer report . . . which contained the deleted or disputed information." (Emphasis added). Logically, the consumer will be able to "specifically designate" which persons need to receive that updated information only if he has been provided the identity of any and all persons who have reviewed the inaccurate information, which is available in the complete consumer report. By sending only the notice, instead of the complete report, the Defendant is depriving the consumer the opportunity to accomplish any of these objectives, which are consistent with the FCRA's purpose.

## B. Defendant's Summary of Argument.

Defendant asserts:

> **Issue Presented:** When a credit reporting agency reports the results of a reinvestigation to a consumer, it must provide "a consumer report that is based upon the consumer's file as that file is revised as a result of the reinvestigation." 15 U.S.C. § 1681i(a)(6). The parties dispute whether Equifax complied with this statute by providing consumer reports summarizing the changes to the consumers' files as a result of the reinvestigations, rather than full disclosures of the consumers' files. Equifax claims that the reports summarizing the changes to the consumers' files as a result of the reinvestigations satisfy the requirements of the statute.

> **Summary of Equifax's Arguments:** The "consumer report" described in the statute is not the same thing as what is commonly described as an individual's "credit report." Congress required the former, not the latter, in the provision governing reinvestigation reports.

> Under the FCRA, a "consumer report" is any communication containing information that relates to a consumer's credit-worthiness, no matter how brief. *See* FTC *Stmt. of General Policy, etc. re: FCRA,* 16 C.F.R. Pt. 600 (list of names can be consumer report); *Yang v. GEICO,* 146 F.3d 1320 (11th Cir. 1998) (report of entities that obtained report regarding consumer and no other credit information constitutes consumer report). The layman's term "credit report," in contrast, refers to what the FCRA describes as a full disclosure of "All information in the consumer's file . . ."

15 U.S.C. § 1681g(a)(1).[9]

Congress knows how to require a full file disclosure when it wants to. *See* 15 U.S.C. § 1681j.  Congress did not mandate a full file disclosure after a reinvestigation. Instead, it required "written notice" of the reinvestigation results to the consumer. The "Contents" of this notice must include – as "part of" the notice – "a consumer report that is based upon the consumer's file as that file is revised as a result of the reinvestigation."  15 U.S.C. § 1681i(a)(6).

A report is not "based upon" a consumer's file if it discloses the entire file.  To give meaning to every word chosen by Congress, the statute must be interpreted to require only a report that discusses those portions of the consumer's file "revised as a result of the reinvestigation."

Where Congress intends to require full disclosure of a consumer's file, it says so expressly or cross-references section 1681g.  Congress never uses "consumer report" to refer to a full file disclosure in any statute governing a credit agency's reporting obligations.  When Congress uses specific language in one part of a statute but not in another part, it is presumed that Congress acted "intentionally and purposely in the disparate inclusion or exclusion."

During the telephonic conference, Plaintiffs emphasized their reliance on an exception to the definition of "consumer report" for reports limited to transactions between the consumer and the person making the report.  This exception plainly does not encompass a reinvestigation report, which sets forth revisions in the ***credit agency's*** reporting of the consumer's accounts with ***third-party creditors***.  In any event, this exception could not transform a "consumer report" – a term of art defined by Congress – into what is commonly called a "credit report."

## CONCLUSIONS OF THE COURT

Contrary to the plaintiffs' argument that this court is being asked to address the merits of

their claims, it is apparent, both from the allegations in the complaint and the arguments of the

---

[9] The defendant has argued the term "credit report" is a "layman's term."  In *Stevenson v. TRW Inc.*, 987 F.2d 288, 292 (5th Cir. 1993), the court refers to §§ 1681g and 1681h with reference to "credit reports."  Neither of these sections use the term "credit report."  Apparently there is some interchangeable use of the terms "credit report" and "consumer report," lay or otherwise.

plaintiffs in their briefs, that a pure legal issue is presented.[10]  That issue is simply stated, although not simply decided.

The rather simple issue is: Does 15 U.S.C. § 1681i(a)(6)(B)(ii), which provides that the CRA "shall provide to a consumer in writing . . . a consumer report that is based upon the consumer's file as that file is revised as a result of the reinvestigation," require that the CRA provide a consumer report that includes the CRA's file ("all of the information on [a] consumer recorded and retained by a [CRA] . . ." 15 U.S.C. § 1681a(g)).

Neither of the parties has cited any case(s) nor legislative history which bear directly on the issue.  Both sides would have this court divine the correct answer from pertinent statutory language and their respective persuasive arguments.[11]

This court starts with the statutory definition of "consumer report."  That definition rather broadly states as follows:

> The term "consumer report" means any written, oral, or other communication of any information by a consumer reporting agency bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living which is used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility for--
>> (A) credit or insurance to be used primarily for personal, family, or household purposes;
>> (B) employment purposes; or
>> (C) any other purpose authorized under section 1681b of this title.

15 U.S.C. § 1681a(d)(1).

---

[10] Plaintiff so acknowledged in a recorded discussion of January 31, 2005.

[11] For some *ipse dixit* discussion of 15 U.S.C. § 1681i(a)(6), see Gary Allen Gardner, The Fair Credit Reporting Act: Implications for 1999 and Beyond, 78 Michigan Bar Journal 298 (March, 1999), and 15A Am. Jur. 2d Collection and Credit Agencies § 58.

Arguably, the purpose of the "consumer report" required under said 15 U.S.C. § 1681i(a)(6)(B)(ii) does not comport with any of the purposes listed under § 1681a(d)(1), including those stated in § 1681b.

There seems to be little question that the alleged reports which the defendant sent to the plaintiffs fall somewhere under the broad definition in §1681a(d) ("any written, oral, or other communication of any information . . ."). Some confusion (among other reasons) is caused by § 1681a(d)(2)(A) which appears to exclude from the definition of "consumer report" "any report containing information solely as to transactions or experiences between the consumer and the person making the report." This language would arguably suggest that the "consumer report" referenced in § 1681i(a)(6)(B)(ii) is not the same "consumer report" defined in § 1681a(d), because the reports required by said § 1681i apply solely to "transactions or experiences between the consumer and the person making the report." 15 U.S.C. § 1681a(d)(2)(A)(i). On the other hand, it is arguable that the report required by § 1681i is a full file report so as to not fall under the § 1681a(d)(2)(A)(i) exclusion.

The bottom line answer is that no unbiased person really knows what is required by the § 1681i provision. On the other hand courts must make decisions.

In *FDA v. Brown & Williamson Tobacco Corp.,* 529 U.S. 120, 132-33 (2000), the Court said:

> In determining whether Congress has specifically addressed the question at issue, a reviewing court should not confine itself to examining a particular statutory provision in isolation. The meaning--or ambiguity--of certain words or phrases may only become evident when placed in context. *See Brown v. Gardner*, 513 U.S. 115, 118, 115 S.Ct. 552, 130 L.Ed.2d 462 (1994) ("Ambiguity is a creature not of definitional possibilities but of statutory context"). It is a "fundamental canon of statutory construction that the words of a statute must be read in their

22

context and with a view to their place in the overall statutory scheme." *Davis v. Michigan Dept. of Treasury*, 489 U.S. 803, 809, 109 S.Ct. 1500, 103 L.Ed.2d 891 (1989). A court must therefore interpret the statute "as a symmetrical and coherent regulatory scheme," *Gustafson v. Alloyd Co.*, 513 U.S. 561, 569, 115 S.Ct. 1061, 131 L.Ed.2d 1 (1995), and "fit, if possible, all parts into an harmonious whole," *FTC v. Mandel Brothers, Inc.*, 359 U.S. 385, 389, 79 S.Ct. 818, 3 L.Ed.2d 893 (1959).

This court has attempted, with little success, to fit the definition of "consumer report" into an "harmonious whole."

Perhaps the only real way to attempt to determine the contextual meaning of "consumer report" is to specifically consider said § 1681i(a) and its purposes. *See Yang v. Government Employees Ins. Co.,* 146 F.3d 1320 (11th Cir. 1998). Since the term "consumer report" can have a variety of meanings, the specific area of the pertinent statute is highly significant. In this regard, the court pays particular attention to § 1681i(a)(6).

Section 1681i(a)(6)(A) makes it plain that the agency is to "provide written notice to a consumer of the *results* of a reinvestigation." (Emphasis added). Section 1681i(a)(6)(A) does not provide what the form or contents of said "notice" should be.

Section 1681i(a)(6)(B) purports to state what the "Contents" of such a notice should be. The interpretative dilemma is exacerbated because (B)(ii) provides that the "consumer report" can be a "*part of*" or "*in addition to*" the notice of the results required under (A). If it simply stated "in addition to," it would appear clear that a full consumer report would be required in addition to the mere results. Even being "a part of" suggests that something over and above the mere results is required.

The parties have not called to the attention of the court any specific statutory or regulatory provisions which harmoniously or otherwise lends clarity to the issue. The court ultimately

23

concludes, without certitude, that the term "based upon the consumer's file as that file is revised . . ." means the full file.  The provision does not state, "based upon the corrected portion of the file."  There is no reason to suggest that the complete file was not intended.

Further, the "consumer report" term which is used is the same term which is repeatedly used in § 1681g.  It would appear that if a full report is not intended, such would have been clearly stated.

This court does not deem its decision to be either infallible or final.  The issue, being an open question, is clearly one which should, early on, be decided by the Court of Appeals.  This is true not only because of these individual cases but because a class certification is also sought.  The court will certify the case pursuant to 28 U.S.C. § 1292(b).


This 4th of February, 2005.

_____
                    **ROBERT B. PROPST**
**SENIOR UNITED STATES DISTRICT JUDGE**